## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 10 2017, 10:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jermaine A. Broussard, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 10, 2017 <br><br> Court of Appeals Case No. <br> 79A04-1611-CR-2636 <br><br> Appeal from the Tippecanoe <br> Superior Court <br><br> The Honorable Steven P. Meyer, <br> Judge <br><br> Trial Court Cause No. <br> 79D02-1510-F4-12 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Jermaine A. Broussard (Broussard), appeals his sentence following an open guilty plea to unlawful possession of a firearm by a serious violent felon, a Level 4 felony, Ind. Code § 35-47-4-5(c); operating while intoxicated with a prior conviction, a Level 6 felony, I.C. § 9-30-5-2(a); and being a habitual offender, I.C. § 35-50-2-8(a).

We affirm.

# ISSUES

Broussard presents us with two issues on appeal, which we restate as:

(1) Whether the trial court abused its sentencing discretion by imposing consecutive sentences; and

(2) Whether Broussard's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

In the early morning hours of October 11, 2015, thirty-seven-year-old Broussard, who had been drinking alcoholic beverages, lost control of his vehicle and ran off the road in Tippecanoe County, Indiana. After concerned citizens notified the police, police officers found Broussard unresponsive behind the wheel of his vehicle, with a loaded .38 caliber revolver tucked in the waistband of his pants. After medics awakened Broussard, he admitted that the

possession of the handgun was unlawful due to a prior felony conviction. Later testing verified that Broussard's blood alcohol level was .194.

[5] On October 15, 2015, the State filed an Information, charging Broussard with Count I, unlawful possession of a firearm by a serious violent felon, a Level 4 felony; Count II, carrying a handgun without a license, a Class A misdemeanor; Count III, carrying a handgun by a convicted felon, a Level 5 felony; Count IV, operating a vehicle while intoxicated, a Class C misdemeanor; Count V, operating a vehicle with at least 0.15 gram of alcohol, a Class A misdemeanor; Count VI, operating a vehicle while intoxicated with a prior conviction, a Level 6 felony; Count VII, operating a vehicle with at least 0.15 gram of alcohol with a prior conviction, a Level 6 felony. On January 8, 2016, the State amended the Information to include Count VIII, which alleged Broussard to be a habitual offender.

[6] On September 16, 2016, Broussard entered an open guilty plea to Counts I and VI, and admitted to being a habitual offender, with all other Counts being dismissed. On October 20, 2016, the trial court conducted a sentencing hearing. During the hearing, the trial court took note of Broussard's criminal history, which began in 1995 when he was convicted of two felonies in Illinois, *i.e.*, aggravated vehicle hijacking/dangerous weapon and aggravated battery/public place. He received seven years of incarceration. Charges of disorderly conduct and burglary were later filed in Cook County, Illinois, but were dismissed. Broussard admitted that during this time he was a member of the Gangster Disciples, which he claimed was disbanded in 1997. In 2001 and

2005 respectively, he was sentenced for two instances of felony aggravated unlawful use of a weapon with a previous conviction in Cook County. In 2006, Broussard moved to Tippecanoe County, Indiana, where he was convicted of resisting law enforcement as a Class A misdemeanor and for which he received probation. In 2009, he was arrested for public intoxication as a Class B misdemeanor, but the case was later dismissed. Also in 2009, he was arrested for domestic battery, which was dismissed as part of a plea agreement in another cause where he was convicted of dealing cocaine. Pursuant to this plea agreement, Broussard received twelve years' imprisonment, with two years to be served through community corrections. Within a year of this sentence, the trial court granted Broussard's request for a modification and commuted one year to placement at Home for Hope. Upon his release from incarceration, Broussard committed operating with a blood alcohol content of .08% or more. In April 2014, Broussard's two-year placement for the dealing cocaine charge was revoked and the court imposed sixty days executed to be served consecutively to the operating charge. Eighteen months after his release, Broussard committed the present offenses.

[7]    During the hearing, Broussard offered his version of the offense and claimed that he had been at a party that evening where a shooting had taken place. An unidentified man carrying a handgun approached Broussard and requested a ride to the hospital because he had been shot. Broussard claimed to have taken the man for medical help since his designated driver—who had driven Broussard's car to the party because Broussard was already intoxicated—could

not be found. Prior to seeking medical attention, Broussard insisted that the man handed him his handgun. After dropping off the injured man at the hospital, he took some other guests from the party home. While returning to his residence, Broussard admittedly passed out behind the wheel and drove off the road. He claimed to be "shocked" to find the handgun in his waistband when the police woke him up in his car. (Tr. p. 39).

[8] At the close of the evidence, the trial court found as aggravating factors: the nature and seriousness of the offense; Broussard's high level of intoxication while possessing a loaded gun during the commission of the offense; Broussard's criminal history; his failed prior attempts at rehabilitation and community corrections; and the repetitive nature of the crime. As a mitigating circumstance, the trial court noted Broussard's guilty plea, he took responsibility for his actions, and Broussard's "alcohol and drug problems however diminished by failed attempts at rehabilitation." (Appellant's App. Vol. II, p. 11). The trial court imposed a sentence of eleven years for the serious violent felon charge, enhanced by seven years for his habitual offender adjudication, and two years for his repeat operating while intoxicated offense. The trial court ordered the sentences to run consecutively

> [b]ased on the nature of the [operating while intoxicated charge] and the fact that he ran off the road while intoxicated with a loaded gun, causing, creating a very serious situation that could have caused injury to others. I know that the element of the [operating while intoxicated charge] is endangerment. However, in this particular case, he ran off the road while in possession of a

loaded gun, and I think that, that's enough of an aggravator to cause those two to run consecutive.

(Tr. pp. 64-65). Broussard's aggregate sentence was twenty years, of which the trial court ordered eighteen years executed with two years suspended to supervised probation.

[9] Broussard now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Consecutive Sentences*

[10] Broussard contends that the trial court abused its discretion by ordering his sentences to run consecutively as "it essentially does nothing more than cite the statutory elements of the offenses to which Broussard pled guilty." (Appellant's Br. p. 7).

[11] Sentencing decisions rest within the sound decision of the trial court and we review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions drawn therefrom. *Id*. We review for an abuse of discretion the court's finding of aggravators and mitigators to justify a sentence, but we cannot review the relative weight assigned to those factors. *Id*. at 490-91. When reviewing the aggravating and mitigating circumstances identified by the

trial court in its sentencing statement, we will remand only if "the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record, and advanced for consideration, or the reasons given are improper as a matter of law." *Id.*

[12] In order to impose consecutive sentences, a trial court must find at least one aggravating circumstance. *Sanquenetti v. State*, 727 N.E.2d 437, 442 (Ind. 2000). Aggravating circumstances may include, but are not limited to, any of several statutorily enumerated factors. I.C. § 35-38-1-7.1. A single aggravating circumstance may support the imposition of consecutive sentences. *Lavoie v. State*, 903 N.E.2d 135, 140 (Ind. Ct. App. 2009). Although a trial court is required to state its reasons for imposing consecutive sentences, it may rely on the same reasons to impose a maximum sentence and also impose consecutive sentences. *Id.*

[13] Here, in explaining its reasons for imposing consecutive sentences, the trial court referred to the extenuating circumstance of Broussard's possession of a loaded gun while inebriated to the point of passing out. Although the trial court acknowledged that the charge of operating a vehicle while intoxicated included an element of endangerment, here, the surrounding circumstances of the charge alluded to more than merely an element of the offense. To be convicted of a serious violent felon, Broussard was only required to possess a firearm. I.C. § 35-47-4-5(c). To be convicted of an operating while intoxicated charge, Broussard was required to operate a motor vehicle while intoxicated in a manner that endangered a person. I.C. § 9-30-5-2(b). In fashioning its

consecutive sentence, the trial court was clearly referencing the danger component surrounding the nature of the charge, *i.e.*, the carrying of a loaded handgun while driving a car and passing out from an overindulgence in alcohol with a blood alcohol content well over twice the allowable limit. His conduct clearly exceeded the elements of the offense and posed a significant danger to the general public. "Generally, the nature and circumstances of a crime is a proper aggravating circumstance." *Gomillia v. State*, 13 N.E.3d 846, 853 (Ind. 2014). Accordingly, we find that the trial court properly explained and supported the imposition of consecutive sentences.

## II. *Appropriate Sentence*

[14] Pursuant to Indiana Appellate Rule 7(B), we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the question is not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The principal role of appellate review is to "leaven the outliers;" it is "not to achieve a perceived correct result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The appropriateness of the sentence turns on this court's "sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad other factors that come to light in a given case." *Id*. at 1224. The defendant carries the burden of persuading this court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

The defendant must show that his sentence is inappropriate in light of both his character and the nature of the offense. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. 2006).

When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Anglemyer*, 868 N.E.2d at 494. The sentencing range for a Level 4 felony is between two and twelve years, with the advisory sentence being six years; while the sentencing range for a level 6 felony is between six months and two and one half years, with the advisory sentence being one year. *See* I.C. §§ 35-50-2-5.5; -7. The sentence for an habitual offender charge for a person convicted of a Level 1 through Level 4 felony is an additional fixed term of between six and twenty years. *See* I.C. § 35-50-2-8(i). Here, the trial court sentenced Broussard to a sentence of eleven years for the serious violent felon charge, enhanced by seven years for his habitual offender adjudication, and two years for his operating while intoxicated offense. With respect to the nature of these offenses, we reiterate that Broussard carried a loaded handgun while heavily intoxicated and barely able to drive a vehicle.

Turning to Broussard's character, we echo the trial court's disbelief in Broussard's explanation of the circumstances put forward during the sentencing hearing.

> Your attorney indicated that the nature of this offense was not that bad if you consider the fact that you were trying to assist and take someone to the hospital and that this guy just handed the

gun to you. This is the first time that I've heard that story. You didn't offer up that story at the time of your arrest. You didn't offer up that story to the probation, when you were given an opportunity to give a statement to the [c]ourt and this is the first time it's been offered. There's been no collaborating evidence presented to support that. What I do see here, by your own admission, is someone who [is] extremely intoxicated, who has prior related offenses of [] unlawfully carrying a gun. You're driving the streets of this community extremely intoxicated and you're caught with a loaded gun in your possession after you drove the car off the road.

(Tr. p. 61).

[17] Broussard's criminal history is lengthy. The instant offense is "the third time" in the last twelve years that Broussard has been caught unlawfully carrying a gun. (Tr. p. 50). He continued committing crimes despite repeated displays of lenient sentencing and correctional alternatives by Indiana courts. Although he has amassed numerous convictions, Broussard habitually minimizes his own culpability. He blamed his Illinois weapons convictions in 1994, 2000, and 2004 on his gang membership. Broussard elaborated that his dealing cocaine conviction resulted from an attempt "to protect" his spouse. (Tr. p. 36). Even before the trial court pronounced sentence, he was placing blame on everyone except on himself. He blamed heavy drinking and "some bad decisions" he had made in "hanging around with the wrong people." (Tr. p. 51). The trial court found that Broussard had failed alternative sentencing in the past: he had been involved in community corrections on "four different occasions" and was now back again before the court. (Tr. p. 64). As such, the trial court was "not that

convinced that community corrections would be helpful or successful[.]" (Tr. p. 64). In light of the evidence before us, we conclude that Broussard failed to persuade us that the nature of the crime and his character provide a reason to revise his sentence.

## CONCLUSION

[18] Based on the foregoing, we conclude that the trial court properly sentenced Broussard.

[19] Affirmed.

[20] Najam, J. and Bradford, J. concur